APPELLATE COURT CAUSE NO. 05-14-00899-CV

| | | |
|---|---|---|
| RANDALL MOIR | § | IN THE COURT OF APPEALS |
| | § | |
| Appellant, | § | |
| | § | |
| VS. | § | 5TH DISTRICT OF TEXAS |
| | § | |
| JPMorgan Chase Bank, N.A. | § | |
| | § | |
| Appellee, | § | DALLAS, TEXAS |

FILED IN
Court of Appeals
JAN 2 0 2015
Lisa Matz
Clerk, 5th District

On Appeal from the 429TH District Court of Collin County, Texas

Trial Court Cause No. 429-04102-2013

## APPELLANT'S MOTION FOR REHEARING/RECONSIDERATION

TO THE HONORABLE JUDGES OF THE COURT OF APPEALS, 5TH DISTRICT OF TEXAS DALLAS, TEXAS:

zza

APPELLANT, RANDALL MOIR files this MOTION for rehearing/reconsideration in response to the opinion issued by the Court on December 4, 2014. A request for an extension to file this Motion for rehearing was formally filed on paper on January 2, 2015, and the 5th Court of Appeals (5th COA, or simply COA) granted the extension request on January 5, 2015. The period granted set the new due date as January 20, 2015 by convention. The Appellant also filed a Notice of Change of Address on January 2 (also filed on paper and submitted ahead of the request for an extension). As of January 19, 2015, the Appellant has not yet received the official paper notice of the extended deadline, but instead received word on Friday, January 17 (via phone) that the extension had been granted. As a result, this Motion for rehearing has been compiled without the advantage of the two weeks originally requested.

The Appellant requests that the Appeals Court consider the following primary issue that is procedural in nature and that was raised and preserved twice at the Trial Court level by the Appellant's two Requests for Finding of Fact and Conclusion of Law (see Clerk's Record pp 96 to 98, see also pp 111 to 112 for a Past Due Notice of FOF & COL). These requests noted specifically that the Petitioner failed to follow the strict procedural mandates stated under TRCP

1

736.6 and that this failure carries with it certain rights for the Appellant that are not afforded other TRCP 736 proceedings where both the letter and intent of Rule 736.6 or its alternative mandate (see TRCP 736.7) are properly and correctly followed.

Consequently, this appeal is very restricted in scope and simply asks at what point has a Rule 736 proceeding successfully satisfies the intent and letter of Rule 735 and Rule 736, or conversely are there certain Rule 736 prerequisites that are material to Rule 736 in order for the Trial Court to be able to be empowered with Rule 736 capacity and authority in order to act upon an Application? That is, what steps must be satisfied according to the intent and letter of Rule 736 before the Trial Court can either deny or grant the Rule 736 Expedited Order to proceed with foreclosure?

This fundamental legal question is at the heart of this appeal. It is also important to convey to all parties that 99.9999% of all Rule 736 proceedings do comply with mandatory aspects of Rule 735 and Rule 736. However, the issues raised here are important for the COA to address because the current Trial Court proceedings demonstrate that the Trial Court's handling of the Petitioner's lawyers failure to follow a few simple, key procedural steps has cost all parties involved unnecessary time and effort in an attempt to correct. That is, the law firm that alleges to represent JPMorgan Chase Bank NA, yet files correspondence and motions that are written to apply to other unnamed third parties that are clearly not JPMorgan Chase Bank NA engaged the Appellant for some two years prior to filing a defective Rule 736 application.

It is clear from all court actions and correspondence to date that this issue of not truthfully naming the party filing the Rule 736 Application is not able to be properly addressed in a Rule 736 proceeding because Rule 736 does not allow discovery. Instead, the Courts have made it clear that when issues are raised concerning the terms of any contract, security agreement or lien, most Trial Courts take the position that all documents filed with the application and all facts alleged are considered true and the Application is accepted as prima facie evidence. While this position is necessary for a default order as Rule 736.7 mandates, the Trial Courts also seem to exert the same stance for an application even when the response demonstrates otherwise.

In the case appealed here, the Application contained a redacted account number (see Clerks record pp 38) that is material to the issue of whether the Appellant was properly notified that a default had occurred under the terms of a loan agreement or lien. The account listed on a

2

true and complete copy of the Notice of Default (see pp 62 of Clerks record) that was submitted to the Trial Court by the Appellant/Respondent listed an account number that never existed as a two party account binding the Appellant to any other party whether that party be the Servicer or the Lender. The lawyer for the petitioner stated in open court that pp 62 of Clerks record was merely a "demand letter" sent by the third party "law firm" and not the official notice of default as required by the contract (see Court Reporters Record Vol 3 pp 7 lines 15 to 17). The Rule 736 proceedings held at the Trial Court level never made it Step 736.6 and thus the merits of the Application and the various documents and affidavits compiled and presented by the third party law firm were never discussed under Step 736.6.

The jurisdictional hearing that was held was scheduled ahead of Step 736.6 and was focused on jurisdictional matter and not on the merits of the Application. In fact, the Appellant specifically stated both in his original response (see the last sentence of the very first paragraph of the Respondents original answer on page 45 of the Clerks Record) and in his Motion to dismiss for lack of Jurisdiction that addressing jurisdictional issues allows the Trial "Court to dismiss the application without regard to determining whether the Petitioner/Plaintiff's application and claims have merit (see page 45 of the Clerks Record, top praragraph, last sentence). The Appellant continued on to state that if the Trial Court could not dismiss the Rule 736 Application for jurisdictional reasons, then the "Respondent/Defendant requests a hearing on Conditions Precedent and whether the required notices were sent . . . prior to the filing of the Application.".

Once again, the hearing that is required under Rule 736.6 and where such matters are the burden of the petitioner to prove never was held. The Court Reporter's record shows that when the jurisdictional hearing was ended, the Trial Court judge erred by immediately moving forward to act upon the Application instead of allowing a party to schedule a hearing under Rule 736.6 that would comply with the strict time frame under which the Trial Court would be empowered to act upon the Application, and either to grant or deny it.

It is here that the Trial Court abused its discretion and commandeered the proceedings to move them beyond the statutory time frame provided for and clearly stated under Rule 736.6. This error occurred when the Trial Court closed the jurisdictional hearing, ruled on the motion to dismiss for lack of jurisdiction, and then immediately acted upon the Application and granted the

3

order without holding a hearing that would fulfill the Trial Court's strict obligations under Rule 736.6. The Appellees lawyers have never denied this either when confronted during the Finding of Facts or at anytime since.

One may rightfully ask why the Trial Court must follow the strict mandate given under Rule 736.6 when a Response has been filed. Does this even matter? A review of some of the Texas legislature's hearings held in 2007 where Rule 735 and Rule 736 were rewritten as well as subsequent rewrites provides some of the intent behind the changes. The expedited foreclosure process was designed to provide the Trial Courts with relief from holding judicial proceedings by creating a process that could move very quickly when all prerequisites and Rule 736 requirements were properly satisfied. When a default order could be issued, the material facts of the filed documents and of the standing of the parties on the application was alleged to be true and the Court was required to issue an order granting the application. This reduced the work load of the Trial Courts by removing many foreclosures from the formal judicial foreclosure track and instead allowed them to proceed as expedited Rule 736 proceedings requiring as few as one hearing when a response was filed or simply a motion for a default order when no reply was filed with the Trial Court.

Rule 736.6 was written to require a hearing when a response was filed in a Rule 736 proceeding. In fact, this hearing was designed to be expedited and the Texas legislature specified a very short time frame for the Trial Court to conduct the hearing once a response was filed. The only other mandate under Rule 736.6 was that:

*The hearing on the application must not be held earlier than 20 days or later than 30 days after a request for a hearing has been made by any party (TRCP 736.6)*

And so it is easy for one to review the Clerks record and the Court Reporter's record to see if any Rule 736.6 hearing was held concerning Trial Court case 429-04102-2013. And since no hearing on the Application was ever scheduled that complied directly with Rule 736.6 deadlines, the Rule 736 proceedings never made it to Step 736.6. But since a reply had been filed, then the Trial Court abused its discretion by not complying with the strict time frame for

4

scheduling and holding a hearing on the Application. And without satisfying Rule 736.6, the Trial Court had no power or capacity to continue with the Rule 736 proceedings until the Trial Court held such hearing.

## Summary of Major Issues

The foregoing eight paragraphs summarize the reason why the Trial Court abused its discretion under Rule 736 and why the COA has jurisdiction to void the Trial Courts actions on the Rule 736 application. The proceedings held by the Trial Court stopped before the step where Rule 736.6 would have been performed. No hearing was ever held that satisfied the strict mandates established under Rule 736.6. Consequently, the Trial Court could not engage the Petition because the Petitioner failed three times to schedule a Rule 736.6 hearing. The Docket, Clerk's record and Reporter's Record all clearly show that a Rule 736.6 hearing was never held. Thus, when the Trial Court closed the jurisdictional hearing, a hearing that by common law and convention could be held at any time, and then immediately acted upon the application without abiding by Rule 736.6, the Trial Court issued an order under Rule 736.8 that must be voided since it cannot be issued without first holding a Rule 736.6 hearing.

## A Logical, Legal Sequence to Rule 736 Proceedings

The sequence in which an order under Rule 736 may be issued when a reply has been filed is clear and straight forward in the TRCPs for Rule 736. For example, Rule 736.1 must be fulfilled before a Rule 736 proceeding can be placed on the court docket. A reply under Rule 736.5 must be timely filed with the Trial Court before the Rule 736 proceedings can progress to Rule 736.6, otherwise the proceedings must take the Default track mandated under Rule 736.7. In either case, the Trial Court whether under the Rule 736.6 track or under Rule 736.7 track cannot progress to act upon the Application at Rule 736.8 until it has also complied with the time frame specified under each track in either Rule 736.6 or Rule 736.7.

Rule 736 was designed to be an expedited proceeding, and so the rules carry deadlines that are the same as statutory law. That is, one must file a response to a Rule 736 application

within a very strict time frame or lose the right to contest the expedited process. And just like the deadlines for perfecting an appeal, one must comply or lose the special rights so conveyed. The argument here is that a Rule 736 order cannot be acted upon by the Trial Court until the proceedings have satisfied all prerequisites sequentially and one of those mandatory requirements when a reply is filed is that the Trial Court hold a Rule 736.6 hearing that complies with the strict schedule dictated. Why is this important? The strict time frames help keep Rule 736 proceedings moving forward and not languishing on the docket as this particular case did because the application itself was defective.

The statutory deadlines mandated for the Trial Court under Rule 736 must be satisfied or the Trial Court loses the special powers provided under Rule 736. Those powers are mostly protections and make the Trial Court's actions on the Application immune to a motion for rehearing, new trial, bill of review, or appeal (see Rule 736.8c).

The position taken here is that the Trial Court abused its discretion, failed to satisfy mandated scheduled, failed to hold a hearing under the strict time frames dictated by Rule 736.6 and thereby ended the official Rule 736 proceedings before step 736.6 had been fulfilled. In this way, the Trial Court leaves a higher court no option other than to void its action on the application since the Trial Court acted without capacity and without authority under Rule 736. One could also say that the Trial Court had no standing or jurisdiction to act upon a Rule 736 application when it allowed the proceedings to venture outside of Rule 736.6 mandates.

**Case Law and Authority concerning Rule 736.6**

After an online search of legal resources for other Trial Court cases where an argument for failing to fulfill Rule 736.6 had been made, the Appellant came up with just his own Appeal. The Appellee and the COA have provided case law where Rule 736 appeals have been either denied or dismissed for reasons that do not fit the current appeal. The specific case cited in the opinion issued by the COA on this appeal (Dec 4 Opinion here), the Pitman vs Fed. Nat'l Mort Ass'n. Appeal was dismissed because the Appellant did not respond to the Motion to dismiss submitted by the Appellees. That case did not raise the issue of a failure to fulfill mandated Rule 736.6 requirements. The other case cited by the COA, Lehman v. Har-Con Corp involved many

complex jurisdictional issues and the question of when an order is or is not appealable. However, that case does not address the error at the trial court level when a Trial Court abuses its discretion and fails to follow Rule 736 mandates. Finally, many other Rule 736 appeals are dismissed when Appellants fail to meet critical deadlines (such as failure to perfect the appeal in time), or fail to submit a letter brief, or fail to submit the Clerk's record or Court Reporter's record. Consequently, while the Appellant has not exhausted a search of Rule 736 cases, the results obtained so far demonstrate that the current appeal has legal merit in that the Trial Court failed to reign in the Petitioners lawyers and allowed them to submit the Application for the Court to act on at a time that was clearly outside of the scope and jurisdiction mandated by a Rule 736 proceeding.

Not one appeal was found that focused solely on whether or not the Trial Court held a Rule 736.6 hearing according to Rule 736.6 mandates. And so if the COA is unable to address this procedural failure and still feels handcuffed by Rule 736.8 despite the fact that the Trial Court never carried the proceedings to that stage since it failed to satisfy Rule 736.6, then the Appellant will request a Writ of Mandamus since the Trial Court clearly abused its discretion and did not comply with Rule 736.6 before acting on the Application. Remember, the Appellee's attorneys pushed the Trial Court three times into scheduling a hearing outside of Rule 736.6. Two of those hearings were used to address jurisdictional issue without addressing the merits of the case as a jurisdictional hearing is supposed to do. The lawyer who showed up in court confided to me that he did not represent JPMorgan Chase Bank NA, but rather stood in for the law firm that compiled the Application. The Court reporter's record shows that I objected to his presence but the Trial Court simply took all the application's allegations as true without scheduling any Rule 736.6 hearing where the Applicant has the burden of proving the alleged facts that are material and prerequisite.

The foregoing sections merely set the stage for what is now a single primary issue for the COA to consider. Although the Appellant has offered several issues to consider in the abbreviated schedule apply to this appeal, the best way to correct the error committed by the Trial Court is to focus on error that has not been addressed to date.

7

# The Primary Issue Presented for Review

*Primary Issue- Issue 1: The Court of Appeals erred in applying TRCP rule 736.8c to a Trial Court proceeding that clearly and unarguably did not comply with a compulsory prerequisite stated under TRCP rule 736.6 that comprises one of the few mandatory procedural steps necessary before a Trial Court can obtain the capacity and power to act upon a Rule 736 Application in any official manner whatsoever when a response has been filed with the court. By not complying with the mandatory parts of Rule 736.6, the Trial Court's actions push the court proceedings out from under the special protections that are provided under Rule 736.8a and by this lack of compliance have removed the 'nonappealable' mandate from restricting what a higher court may do to correct the abuse of discretion .*

Simply stated, a Rule 736 filing where the Applicant's lawyers request hearings not just once or twice but actually three times outside of the strict mandate clearly specified under Rule 736.6 also lose the right to claim any special Rule 736.8 protections. Rule 736.6 only applies to expedited foreclosure proceedings where the Respondent files a reply. Once a reply is filed with the court, then the Trial Court must follow a few simple mandatory steps if the proceedings are to continue as a Rule 736 proceeding. But when the Trial Court fails to follow the mandatory steps clearly stated under Rule 736.6, then the Trial Court also fails to obtain the special power, capacity and jurisdiction to act upon the Rule 736 application in a manner where the Trial Court's actions are automatically immune from appeal.

The primary question under this appeal can be stated as follows: what empowers the Trial Court with capacity and standing to be able to act upon a Rule 736 application? Rule 736.7 states in clear language how the Trial Court is to proceed when no response is filed. Rule 736.6 states in clear language how the Trial Court is to proceed when a response is filed. And Rule 736.8 provides specific protections that the Trial Court's actions are given when the Trial Court has complied either with Rule 736.6 or Rule 736.7 and which is dependant on the track the Trial Court must follow according to whether a response is filed or not. And one of the protections assigned to the Trial Court's actions when it properly satisfies all Rule 735 and 736 mandates is

that the granting or denying of the application is not appealable.

**A Jurisdictional Hearing is not a Rule 736.6 Hearing**

What was held on April 11, 2014, was a jurisdictional hearing and case law clearly allows the Trial Court or any party the right to request a hearing on jurisdictional issues at any time. However, the commandeering of this jurisdictional hearing straight into a Rule 736.6 hearing violates both the letter and intent of Rule 736.6. The Trial Court abused its discretion when it proceeded to act upon the Rule 736 application outside of the strict mandate given for scheduling such a hearing.

A Rule 736 proceeding is designed to be fast track and to consume minimal court time and resources when the application is correctly completed and all prerequisites fulfilled as required. One of the most important prerequisites is that an expedited Rule 736 proceeding does not alter any foreclosure requirement or duty imposed under the terms of the loan agreement, contract, or lien sought to be foreclosed. This point is stated clearly in Rule 735.2 and again in Rule 736.1(d)3(F) and 3(G). These require that all notices required by the loan agreement/contract/lien and by applicable law have been sent prior to the filing of the Rule 736 application with the Trial Court. The Rule 736 proceedings conducted by the Trial Court never held a hearing to address these issues despite the Appellants reply that raised material issues about them. They represent another are to address however the Appellant feels that the issues around Rule 736.6 are more productive given the status usually assigned to Rule 736 proceedings.

## PRAYER

For the reasons stated in this motion, Appellant asks the Court to grant this motion for rehearing, withdraw its opinion, void the Trial Court's actions on the Rule 736 Application and either (1) throw out the proceedings entirely for not complying with Rule 736 mandates, or (2) request that the Trial Court allow the Rule 736 proceedings to resume where they left off after holding a special hearing to update all parties since certain material facts may have changed substantially

9

and may make the Rule 736 proceedings obsolete. There is of course, one other option in front of the Court. The Court can revert back to setting a schedule for filing a formal brief, holding oral argument and proceeding with the appeal under a normal track.

**APPELLATE COURT CAUSE NO.   05-14-0899-CV**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the Appellate served by U.S. Mail on January 20, 2015, a true and correct copy of this Motion to Request Rehearing/Reconsideration to Marcie L. Schout, 2001 Bryan St., Suite 1800, Dallas, TX 75201.

Randall Moir   (Pro Se)

PO Box 1356

Frisco TX 75034-0023

972.335.4446